Good morning. May it please the Court, Thomas Easton for Appellants, Alperin et al. We have three primary issues on this today. The district court erred in not finding diversity in jurisdiction. The court erred in not preserving the class, despite misjoinder. And the court abused its discretion by not allowing us to amend. There are some other issues as well, but primarily why don't you start with jurisdiction? Excuse me, Your Honor? Why don't you start with jurisdiction? Jurisdiction. Yes. We pled oh, well, diversity, not diversity, you want jurisdiction, ATC, okay? Well, what's the basis for your subject matter jurisdiction? Well, brigandee, aiding and abetting. Under the? ATC. ATC? Aiding and abetting brigandee. Yes. The Holocaust in Croatia, of course, was during the war years, 1941 to 1945. It's the two years afterwards that our case comes from where the loot from the Holocaust there was disposed of, taken out, and some of these were done directly, we allege, by Franciscans. And how do you show that that brigandee has been – violates some internationally recognized norm? Well, piracy and brigandee, we maintain. You think it's equivalent to piracy? Yes. Absolutely equivalent. Do you have any authority to support that proposition? Do you have any cases or other authority? Well, we cite to the Philippine Supreme Court, 1907. We also cite to the Artukovic case in California, Southern District, in 1959, in which they state quite plainly brigandee. How do you define brigandage? Well, it's not just robbery. It's organized usually as quite a large group, just as the pirates of Somalia these days are in groups and not just individuals. So brigandee is – well, Robin Hood would be the classic example. He had a band. They had a meeting place. They fed each other, took care of each other. It's much more organized. But it falls under the same penalty of piracy by historical jurisprudence because death is – summary judgment is available. You can kill a pirate instantly without any sort of judicial proceeding. How does brigandage connect to the international law of nations and so forth? How do you – that's – I guess that's the question. Well, I would simply say it's under – it's a violation of international law that a simple robbery would not be. A simple case of – Well, what is it? I guess if you've got a judgment of an international court or – No, it would not be necessary. I'm thinking of the pirates who were – had the captain of a ship. He'd given himself up as a hostage to, I think, the three Somalis and then the American warship came up and the seals waited as long as they could and finally they shot and killed two of them instantly. This is an example of piracy. The same thing would apply to brigands. Had anybody been able to catch Ushasha after the war or during the war, for that matter, while they were taking their loot, a summary, a judgment of instant execution was possible under recognized international law for many centuries. I guess I'm not understanding what's the – how you're differentiating brigandage from just theft. Well, it has to be done by a group. It's not a simple robber. So – and it's an organized group. In this case, we're alleging the Franciscans are a group, and several of them, personally, were involved in atrocities during the war, and that the aiding and abetting of them, of this transfer of the loot, is what is at issue. Aiding and abetting this Ushasha regime? Yes. So if that's what they're doing, does that get you into the problem of the political question issue that came up in the previous case? If they're aiding and abetting the government, that's what makes it unique for this brigandage. And aren't we inquiring into what the government did then? It's getting very close to being a political question if it happens during the war. By the previous ruling in 2005, this is true. We feel, however, that the actions that we're accusing them of took place after the war, disposing of the loot, transferring it. Our expert witness, Mr. McGowan, was present in Italy at the time, in Rome. He didn't personally see the 10 trucks he talks about, but his evidence is pretty good that it was a matter of some renown at the time that loot was coming in to the Croatian San Girolamo, and secreted there, and then moved afterwards. He's a very remarkable person. He was only 21 or 22 at the time. Later on he went to Harvard Law School and graduated. He made a very good witness, but, of course, he's getting old, so we were hoping that this case would not take quite so long. It's been going on quite a while now. Why do you think it makes a difference that it happened after the war? Obviously the government's no longer in power, but it's still related to the governmental action and therefore arguably part of a political question. That's a tough issue for us, whether it could possibly be a political question. But we have to maintain that it is separate from that in the sense that this is a private organization, the Franciscans. They're not a governmental organization. The Vatican Bank was able to use that and escape the liability, but we think that a private organization like the Franciscans cannot. Okay. What did the district court do wrong in that, with respect to your argument of diversity of citizenship? I mean, you didn't really move to amend, did you? Well, we wouldn't give it any opportunity. She did not give us any oral argument. We haven't seen her face for probably three or four years now. She normally has not been giving us oral argument. Had we had oral argument and she announced that she was going to find against us on the Bregennage and the ATC, we would certainly ask to amend. But she has always granted us leave to amend in the past without making a formal request on our part. I don't recall any of our pleadings in opposition to the motions to dismiss ever asking for leave to amend. She just simply grants it. So we were quite surprised. And since we had no oral argument, there's no way to ask her once we saw which way she was thinking. So we would have to say that she should have reopened the case in order to allow you to amend your complaint to have diversity. Well, we have several grounds for that. Rule 21 would seem to grant even this Court. But I was thinking, if we did that, this case is still dismissed. So don't you have to get the case reopened somewhere? I mean, even if we said, okay, we're going to grant you the right to amend your complaint and get rid of these people, the foreign plaintiffs, the case is still dead unless it's reopened, no? Not as I understand it, no. No, the case is not dead. She has said we're supposed to transfer it to State court. She didn't say to the court that the case had no merit. She said she didn't want to hear it because of lack of diversity. And we don't. I mean, doesn't her judgment, whatever it is, doesn't it have to be reopened before any court can? No, no. She's saying we need to transfer it to State court. And our response is, well, it's going to be over 5 million in damages. It's going to come right back up to the Federal court. So I don't see where she has at any point said it's a dead case. She simply said she doesn't think she wants to have a diversity jurisdiction  She just eliminated the foreign plaintiffs. That's our request. And remanded it. Then what would the situation be? It continues on with our, hopefully, our Seventh Amendment complaint, which we have filed for her consideration. Under what claim? The Seventh Amendment complaint is part of our excerpt to record. Right. And the Seventh Amendment complaint has no foreign plaintiffs. They're all U.S. citizens. So the diversity question is answered. And then you're just bringing your, quote, garden variety, whatever the robbery or the Horrible phrase. It's a horrible phrase. I agree it's a horrible phrase. Yes. And we even repeated it once. But to talk about that in respect to this Holocaust in Croatia, they're not garden variety. It's a brigandage. It's not just robbery. It's a very, very serious matter. It's appalling to even think that we should have to review something so long. May I reserve my time for rebuttal now? Yes, you may. Thank you. May it please the Court. My name is Kim Jansen. I'm here on behalf of the Franciscan Order, OFM. I'm joined at council table by my colleague, Joel Bertocchi. Essentially, there are three questions here. One, whether or not Judge Chesney made an error in deciding that there was no subject matter jurisdiction. The second question, whether or not she abused her discretion in refusing to reopen that judgment to allow plaintiffs to cure the diversity defect. And then third, even if there was some sort of error and even if it should have been even if it could have been cured with respect to diversity, was the dismissal proper for the alternative grounds that we raised in our motion below and again in our appellee's brief in this appeal. With respect to subject matter jurisdiction, I think Judge Adelman is absolutely correct that in order to cure, for this Court to cure the defect in diversity, the case is still dismissed unless the judgment is reopened. It's sort of an unusual procedural situation here in that we've got a judgment that's up for review, but in order to vacate that judgment, there would have to be the diversity question would have to be cured first. I don't think Judge Chesney made any error in declining to allow plaintiffs the opportunity to correct that below. They did, post-judgment, file a motion to file their Seventh Amendment amended complaint to cure that and to vacate the judgment. But as the judge pointed out, this case had been going on at that point for about 10 years through six amendments to the original complaint, plenty of opportunities to either amend to remove the foreign plaintiffs and cure the diversity issue or to even ask in the alternative if this Court should find no subject matter jurisdiction under the ATCA, then we ask that, that the foreign plaintiffs be dismissed. They didn't do that. They waited until after the case had already been dismissed, after 10 years of litigation, to ask for a second bite of the apple, and she declined that. And I don't think we can say that that was an abuse of her discretion in that instance. Even if her judgment were vacated and even if this case were to be remanded back down to the district court, we still have fully briefed a number of alternative grounds for dismissal that she did not reach in her decision, but which are dispositive of this case. The first, in terms of, again, on subject matter jurisdiction, is the Treaty of Peace with Italy. And Plaintiff's counsel, Jonathan Levy, actually filed a declaration in this case in opposition to the forum nonconvenience argument, asserting that under the Treaty of Peace with Italy, these claims would almost certainly be barred if the case were brought in Italy. Well, if they're barred under that treaty in Italy, they're barred under that treaty here. We rate that argument in our brief in this appeal. Plaintiffs did not respond to that in our reply brief effectively, I'd say conceding the issue. Shouldn't all those other arguments, if they didn't want to say that there was diversity or create diversity, shouldn't all that be dealt with by the district court first? If you wanted to cure diversity, shouldn't it be determined by the district court? Shouldn't all the Treaty of Peace with Italy and these other issues that really I mean, I guess you raised them, but haven't really been responded to, and the district court never passed on them. Shouldn't the district court pass on them preliminarily before we do anything? It certainly would be one option to remand to the district court and allow Judge Chesney to rule on these. But these issues are important. But your position was that this wasn't timely. I'm sorry? I thought your position is in essence that we could do that, but that this wasn't timely raised anyway. To cure the jurisdictional defect, yes, yes, yes. In that respect, that wasn't sought in a timely manner. But even if this Court wanted to cure the jurisdictional defect, I think it would be appropriate for this Court to rule on those remaining issues, because they were fully briefed below. The record is complete. Both parties presented all the evidence that they have. There are no disputed material questions of fact. Yes, it could go back down. We could present these. That would be the usual way of proceeding if we got that far. I mean, I know we can't affirm on any basis on the record, but generally speaking, if there's a substantive issue like the treaty with Italy, we'd want the views of the district court first. But you're free to argue it. I'm just suggesting that I'd be reluctant to, certainly, to rule on those alternatives in the first instance unless we really had to. But you don't understand your argument. Certainly. And in terms simply of the efficiency of the Court, given that, you know, we are 12 years in now, these issues have been briefed so many times, the record is pretty comprehensive, and it is a straight legal question. There are no fact issues that need to be determined. So there is – these really are issues that are appropriate for this Court to decide, even though Judge Chesney did not reach them down below. Why don't you talk to us about whether there's a claim under the Alien Tort Claim statute? Sure. Plaintiffs' counsel has asserted that their position is essentially that the basis for jurisdiction under the Alien Tort Claims Act or Federal Question is this crime of brigandry or brigandage. It seems to be used alternately. And there are two basic definitions of brigandry that I've been able to uncover, and one is sort of a colloquial sense of simple theft. As we know, simple theft is not a Juice Cogin's crime, an international norm defined with 18th century paradigms. So if that's the sense of brigandry, no Alien Tort Claims jurisdiction. The alternative definition, as we saw in Justice Jackson's comments before the Nuremberg Tribunal, equating brigandry as what we now refer to as war crimes. Well, if what we're talking about are war crimes, then this Court's previous decision has already disposed of that, that war-objective claims are not justiciable. And Plaintiff's counsel has candidly conceded that that is a problem for them, that that raises the political question, question again, that this Court has, in fact, already decided. So no matter how we want to define brigandage, none of the available supported definitions create Alien Tort Claims jurisdiction or Federal Question jurisdiction. If this Court has no other questions. I don't know that I can answer that question because I don't think we've done discovery. No, no, I understand. Yeah, so I'm not entirely sure what the context are with Chicago or with Illinois. So I can't say one way or another if that would be a possibility.          Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Okay. If there are no other questions. Thank you. Thank you, Counsel. May it please the Court. The district court did dismiss the Treaty of Italy as a matter long ago, and we've opposed it. The political question related with the Treaty of Italy would be between the Italian government and any of us. Franciscans in Croatia would not be covered under the Treaty of Italy, and therefore district court didn't discuss that. Are there any other questions I might? No. There don't appear to be any. Thank you. Thank you very much for your time. Thank you, Counsel. The matter just argued is submitted for decision. That concludes the Court's calendar for this morning. The Court stands adjourned. All rise.
judges: Adelman, Schroeder, Thomas